IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| **DEANTE GHOLSTON,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 5:13-cv-444 (MTT) (CHW) |
| | : | |
| Warden **CARL HUMPHREY**, *et al.*, | : | Proceedings Under 42 U.S.C. § 1983 |
| | : | Before the U.S. Magistrate Judge |
| Defendants. | : | |
| | : | |

### REPORT AND RECOMMENDATION

Plaintiff Deante Gholston, a prisoner at the Georgia Diagnostic and Classification State Prison ("GDCP"), claims in this Section 1983 action that he was the victim of excessive force at the hands of prison officials on three separate occasions. Of the nineteen Defendants named by Plaintiff, seventeen have been served,[1] and those seventeen Defendants have filed three motions to dismiss which are currently before the Court. (Docs. 26, 56, 75). Also before the Court are the Defendants' motion for sanctions (Doc. 60), Plaintiff's motion for preliminary injunction, (Doc. 82), and Plaintiff's motion for TRO (Doc. 86). In accordance with the analysis below, it is **RECOMMENDED** that the Defendants' Motions to Dismiss be **GRANTED IN PART AND DENIED IN PART**, that the Defendants' Motion for Sanctions be **DENIED**, and that Plaintiff's Motions for Injunctive Relief be **DENIED**.

### BACKGROUND

Plaintiff claims he was "beaten after being placed in restraints (Hand-cuffs) three (3) times" while at the GDCP. (Doc. 1, p. 7). The first alleged incident occurred on February 3, 2012. (Doc. 1, p. 8; Doc. 34, p. 2). On that date, Plaintiff claims that Defendant Kyles held

---

[1] The Court has not yet successfully served Defendants Walker and McMillian on Plaintiff's behalf.

1

Plaintiff down while Defendant Hill slammed Plaintiff's head into the ground five times, and then punched Plaintiff three times. Plaintiff also claims that Defendants Cooper, O'Neal and McMillian were present, but that they made no attempt to intervene.

The second alleged incident occurred on February 22, 2012. (Doc. 1, p. 8; Doc. 34, pp. 2-3). On that date, Plaintiff claims that Defendants Daniels, Walker and Russo punched and kicked Plaintiff, who was "on the ground not resisting to be restrained." (Doc. 1, p. 8). Plaintiff further claims that Defendant Russo grabbed and twisted Plaintiff's genitals, struck Plaintiff in the head twice with handcuffs, and then slammed Plaintiff's head into the ground. According to Plaintiff, Defendants Jackson, Wesley, Mabry, Walters and Johnson were also present but made no attempt to intervene.

The third alleged incident occurred on December 5, 2012, following a "disturbance"[2] which Plaintiff admits he caused. (Doc. 1, p. 8; Doc. 34, pp. 3-4). According to Plaintiff, Defendants Kyles, Russo, Williams and Means sprayed Plaintiff with riot gas and then instructed Plaintiff to "cuff up" through a small opening in the door. After Plaintiff "cuffed up," the Defendants allegedly opened Plaintiff's cell door, rushed in, knocked Plaintiff to the ground, and then began kicking and punching Plaintiff while he was still restrained by handcuffs. Plaintiff does not appear to sue Defendant Means for excessive force, presumably because Defendant Means did not "kick and punch" Plaintiff. (Doc. 1, pp. 8-9). Plaintiff does sue Defendant Means, though, along with Defendants Clupper and Wilkins, for failing to intervene to stop the beating.

Not directly involved in any of the three aforementioned excessive-force incidents are Defendants Humphrey and Bishop, the GDCP Warden and Deputy Warden who, according to Plaintiff, "were made aware of their staff's misconduct toward[] Plaintiff," but who nevertheless

---

[2] Plaintiff apparently broke his cell window. (Doc. 1-3, p. 2). The record also suggests that the February 22, 2012 cell extraction was the result of Plaintiff's destruction of his cell sprinkler. (Doc. 1-6, p. 3).

"authorized and sent some defendants named in this [action] to participate in incidents of force resulting in more physical abuse after plaintiff requested to be protected from those defendants." (Doc. 1, pp. 8-9; Doc. 34, pp. 9-10).

Plaintiff seeks, from the Defendants, nominative, punitive and compensatory damages, as well as a declaration that his rights were violated and an injunction against Defendants Humphrey and Bishop preventing them from "allow[ing] use of force to be done on Plaintiff . . . unless use of force is necessary." (Doc. 1, p. 10). Plaintiff sues the Defendants in their individual capacities, and he additionally sues Defendants Humphrey and Bishop in their official capacities. (Doc. 1, p. 7).

## THE DEFENDANTS' MOTIONS TO DISMISS

The Defendants who have been served in this action have all moved, in three separate motions, to dismiss some or all of Plaintiff's claims against them. (Docs. 26, 56, 75). As discussed below, however, Plaintiff has pled sufficient facts to go forward on his excessive force, failure to intervene, and failure to protect claims, except insofar as Plaintiff sought to sue the Defendants, in their official capacities, for monetary damages.

### Legal Standard

Rule 12(b)(6) and qualified immunity are intertwined at the motion-to-dismiss stage such that "Defendants are entitled to qualified immunity in a Rule 12(b)(6) motion to dismiss only if the complaint fails to allege facts that would show a violation of a clearly established constitutional right." *Kyle K. v. Chapman*, 208 F.3d 940, 942 (11th Cir. 2000); *see also Pearson v. Callahan*, 555 U.S. 223, 231 (2009). A complaint is subject to dismissal under Rule 12(b)(6) itself if it lacks sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial

3

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

At the pleading stage, the Court must accept all allegations in the complaint as true, and must construe the facts in the light most favorable to the plaintiff. *See, e.g.*, *Lopez v. Target Corp.*, 676 F.3d 1230, 1232 (11th Cir. 2012). Although Courts are not bound to accept as true "a legal conclusion couched as a factual allegation," *Iqbal*, 556 U.S. at 678, *pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys, and are to be liberally construed. *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011).

## Analysis

Plaintiff sues the Defendants for (a) using excessive force on three different occasions, (b) failing to intervene on those occasions, and (c) failing to protect Plaintiff from harm. As discussed below, Plaintiff has alleged facts sufficient to proceed with all three types of claims. That said, (d) Plaintiff cannot sue Defendants Humphrey and Bishop in their official capacities for monetary damages under Section 1983. Therefore, and as explained in greater detail below, it is recommended that the Defendants' Motions to Dismiss be granted in part and denied in part.

(a) Excessive Force

Plaintiff sues Defendants Hill, Daniels, Walker, Russo, Kyles, and Williams for using excessive force in violation of the Eighth Amendment. (Doc. 34, p. 1). *See Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (describing the relevant standard as "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm"). To reiterate, the allegations underlying Plaintiff's excessive-force claims are as follows. Plaintiff alleges that:

    1.    On February 3, Defendant Hill slammed Plaintiff into the ground five times and then punched Plaintiff three times while Defendant Kyles held Plaintiff down;

    2.    On February 22, Defendants Daniels, Walker and Russo punched and kicked Plaintiff, and that Defendant Russo also twisted Plaintiff's genitals and then struck Plaintiff's head with handcuffs and against the ground;

    3.    On December 5, Defendants Kyles, Russo and Williams knocked Plaintiff to the ground and kicked and punched Plaintiff, even though Plaintiff had already been sprayed with "riot gas" and had "cuffed up."

The Defendants do not argue that Plaintiff fails to state a claim for relief regarding his excessive force claims,[3] and accordingly, at the least, Plaintiff should be allowed to proceed with his excessive-force claims against Defendants Hill, Daniels, Walker, Russo, Kyles, and Williams.

(b) Failure to Intervene

In addition to his underlying excessive force claims, Plaintiff also sues Defendants O'Neal, Cooper, McMillian, Kyles, Jackson, Wesley, Mabry, Johnson, Walters, Clubber, Wilkins and Means for failing to intervene. *See, e.g.*, *Williams v. Scott*, 433 Fed. App'x 801, 805 (11th Cir. 2011) (citing *Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998)) ("Prison correctional officers may be held directly liable under Section 1983 if they fail or refuse to intervene when a constitutional violation occurs in their presence").

---

[3] Nor do the Defendants assert qualified immunity. *See Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002) ("In this Circuit, a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution by the Supreme Court decisions in *Hudson* and *Whitley*.").

5

The Defendants, with the exception of Defendant Kyles, argue that they cannot be held liable for failing to intervene because they had no opportunity to intervene. (Doc. 26-1, pp. 4-7). Specifically, the Defendants appear to argue that the durations of the three alleged excessive force incidents were so short that the Defendants were deprived of the opportunity to intervene as a matter of law. (*Id.*). Defendants Johnson, Mabry, Wilkins and Clupper additionally argue that they could not intervene because they were assigned to film the February 22 and December 5 cell extractions, and were therefore "engaged in performing their own duties." (Doc. 26-1, p. 7).

The cases cited by the Defendants to support their "duration" arguments are readily distinguishable from this case, and as a result, the Defendants' duration argument is not a proper basis for dismissal. In arguing that the alleged excessive-force incidents in this case were too short to permit intervention, for example, the Defendants cited *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (1988), a Second Circuit case holding that three blows struck in rapid succession did not afford a realistic opportunity to intervene; and *Lanigan v. Vill. of E. Hazel Crest, Ill.*, 110 F.3d 467, 478 (1997), a Seventh Circuit case holding that "one poke and push" similarly did not afford a realistic opportunity to intervene. Also cited by the Defendants were *Hadley v. Gutierrez*, 526 F.3d 1324, 1331 (11th Cir. 2008) (one punch in the stomach), and *Jackson v. Gerl*, 622 F.Supp.2d 738, 750-51 (W.D. Wis. 2009) (use of a "stinger grenade").

In contrast to the facts described in the cases cited by the Defendants, the facts in this case, especially when construed in the light most favorable to Plaintiff, indicate that the Defendants had ample time to intervene if they had wished to do so. Regarding the February 3 incident, Plaintiff alleges that Defendants O'Neal, Cooper and Kyles watched while Defendant Hill grabbed Plaintiff's head, smashed it into the floor five times, and then punched Plaintiff

three times. (Doc. 1, p. 8). Regarding the February 22 incident, Plaintiff alleges that Defendants Jackson, Wesley, Mabry, Walters and Johnson watched while Defendants Daniels, Walker and Russo repeatedly punched and kicked Plaintiff, and also while Defendant Russo grabbed and twisted Plaintiff's genitals, struck Plaintiff in the head twice with handcuffs, and then slammed Plaintiff's head into the ground. (Doc. 1, p. 8). Finally, regarding the December 5 incident, Plaintiff alleges that Defendants Means, Clupper and Wilkins watched while Defendants Kyles, Russo and Williams knocked Plaintiff over and then "kicked and punched" Plaintiff, all after Plaintiff had already been sprayed with "riot gas." None of these incidents, as described by Plaintiff, involved only one or a few blows conducted by a single excessive-force user. Rather, each incident seems to have taken enough time to allow a reasonable bystanding officer to determine that intervention was necessary, and to act on that determination.

Finally, with regard to the claim by Defendants Johnson, Mabry, Wilkins and Clupper, that their "own duties" of filming the February 22 and December 5 cell extractions prevented them from intervening as a matter of law, no authority supports the Defendants' argument. *See, e.g.*, *Thwaites v. Wimbush*, No. 5:11-cv-195 (CAR), 2013 WL 1333723 at *6 (M.D. Ga. Mar. 29, 2013) (citing *Bailey v. City of Miami Beach*, 476 Fed. App'x 193 (11th Cir. 2012)) (officer's obligation to document the cell extraction may have prevented him from physically intervening, but did not relieve him of his duty to speak against the unconstitutional violence).

(c) <u>Failure to Protect</u>

Plaintiff last sues Defendants Humphrey and Bishop, the GDCP Warden and Deputy Warden, for failing to protect Plaintiff from harm at the hands of the other Defendants. (Doc. 1, p. 9; Doc. 34, pp. 4-7). Plaintiff specifically alleges that Defendants Humphrey and Bishop were "made aware of their staff['s] misconduct toward[] Plaintiff," but that they nevertheless

"authorized and sent some defendants named in this [action] to participate in incidents of force resulting in more physical abuse after Plaintiff requested to be protected from those defendants." (Doc. 1, pp. 8-9; Doc. 34, pp. 4-7).

"It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999). Supervisory liability does attach, though, when there is a "causal connection" between the actions of the supervising official and the alleged constitutional deprivation. *Id.* "A causal connection may be established when: 1) a 'history of widespread abuse' puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; 2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or 3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so." *Valdes v. Crosby*, 450 F.3d 1231, 1237 (11th Cir. 2006).

Although the standard for supervisory liability has been described as "extremely rigorous," *Cottone*, 326 F.3d at 1360, Plaintiff has alleged facts sufficient for his failure to protect claims against Defendants Humphrey and Bishop to survive at the motion to dismiss stage. Specifically, Plaintiff alleges that Defendants Humphrey and Bishop authorized or allowed the other Defendants to use force on Plaintiff despite their knowledge—through grievances and personal complaints from both Plaintiff and other inmates, and also from video footage and the reports of other officers—that at least some of the other Defendants to this action had previously

been accused of "misconduct,"[4]. (Doc. 1, pp. 8-9; Doc. 1-4, pp. 2-8; Doc. 34, pp. 4-5). Plaintiff also claims that Defendant Bishop's authorization of force "ha[d] a hidden meaning . . . it [meant] 'teach him a lesson.'" (Doc. 34, p. 10).

Although Plaintiff's allegations are not sufficient to demonstrate a "history of widespread abuse," they are sufficient, at this stage in the proceedings at least, to state a plausible claim that Defendants Humphrey and Bishop knew that several of the other Defendants posed a threat to Plaintiff but failed to act appropriately. *See Franklin v. Curry*, 738 F.3d 1246, 1252 n.7 (11th Cir. 2013) ("Nothing in *Iqbal* suggests that supervisors cannot be held liable for deliberate indifference toward risks posed by their subordinates or that such liability requires a higher *mens rea* than any other deliberate indifference claim"). Also of note in this regard is the fact that at least two of the Defendants to this action, Defendants Kyles and Russo, were each allegedly involved in two of the excessive force incidents at issue in this case: Kyles in the February 3 and December 5 incidents, and Russo in the February 22 and December 5 incidents.

The Defendants Humphrey and Bishop argue that Plaintiff "failed to allege knowledge of a particularized threat," (Doc. 26-1, p. 10), but Plaintiff was not required to alert Defendants Humphrey and Bishop to the precise way in which the other Defendants might have harmed him in order to put Humphrey and Bishop on notice. *See, e.g.*, *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1102 (11th Cir. 2014). Nor are Plaintiff's allegations mere "generalized fears," as the Defendants contend. (Doc. 26-1, p. 10). Rather, it is sufficient for now that Plaintiff alleges that Defendants Humphrey and Bishop "failed to act despite [their] knowledge of a substantial risk of serious harm." *Caldwell*, 748 F.3d at 1101-02 ("Whether a prison official had the requisite knowledge of a substantial risk is a question of fact").

---

[4] The Defendants argued in their motion that Plaintiff failed to allege prior incidences of *excessive* force, (Doc. 26-1, p. 10), but it is clear from context what sort of "misconduct" Plaintiff refers to in his filings. *See also* (Doc. 34, p. 9).

Defendants Humphrey and Bishop argue that prison officials are entitled to "wide-ranging deference" in their decisions to authorize the use of force in the face of prison unrest. (Doc. 26-1, pp. 11-12). Such deference, however, "does not insulate from review actions taken in bad faith and for no legitimate purpose." *Whitley v. Albers*, 475 U.S. 312, 322 (1986). Because Plaintiff has adequately alleged bad faith on the part of Defendants Humphrey and Bishop, the deference owed to the Defendants does not warrant a dismissal of Plaintiff's claims against them.

(d) Section 1983 "Persons"

Although Plaintiff should be allowed to proceed with his excessive force, failure to intervene, and failure to protect claims, Plaintiff may not sue Defendants Humphrey and Bishop, or any of the Defendants for that matter, in their official capacities for monetary damages. *See Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989) ("neither a State nor its officials acting in their official capacities are 'persons' under § 1983"). In this respect only, therefore, it is recommended that the Defendants' Motions to Dismiss be granted.

## THE DEFENDANTS' MOTIONS FOR SANCTIONS

In addition to their Motions to Dismiss, the Defendants have also filed a Motion for Sanctions in which they ask the Court to dismiss Plaintiff's Complaint in its entirety due to Plaintiff's alleged dishonesty. According to the Defendants, Plaintiff approached Defendant Russo and offered to withdraw his claims against Russo in exchange for Russo's provision of a statement in support of Plaintiff's claims against the other Defendants. (Doc. 60-2, p. 2). The Defendants also allege that Plaintiff admitted to Defendant Russo that he was "just writing things down" in his complaint. (*Id.*).

The Defendants' allegations are supported by both an affidavit submitted by Defendant Russo, (Doc. 60-1), as well as a report which Defendant Russo claims to have authored immediately after receiving Plaintiff's offer. (Doc. 60-2). Russo's report reads, in relevant part:

> At that time he said he didn't want to put me in the lawsuit and if I would give him a statement saying I saw other officers doing something wrong he would take me out of it. He said Ofc. Means and Ofc. Jackson were writing statements for him. He said he knows I have a new baby at home and could not afford to lose any money out of my check. He asked if I planned on staying here for a while cause if I would tell on the people he named in his lawsuit then I could just quit. He said that once I write a statement saying I saw Lt. Kyles do something wrong or that administrators ordered him to be assaulted he would take my name out of the lawsuit. I then asked why he lied and said I sexually assaulted him. He said I don't know I was just writing things down. He asked me to think about it and handed me 3 pieces of paper he had filled out for me to write my statements on.

Attached to Russo's affidavit, are three blank hand-written affidavit forms labeled with the case caption for the instant case. (Docs. 60-3, 60-4, 60-5).

Plaintiff has filed a Response (Doc. 78), which includes his own declaration disputing many of the facts described in Russo's affidavit. Plaintiff states that Russo initiated a conversation about the instant lawsuit by asking Plaintiff how much money he sought. (Doc. 78-1, p. 2). Plaintiff admits that he gave Russo blank declaration forms and asked Russo "to write statements of what he witnessed," but states that he "did not attempt to bribe defendant Russo," and that he "did not ask [Russo] to lie, nor influence his knowledge of the incidents." (Doc. 78, p. 2).

Rule 11 allows Courts to sanction frivolous claims. Fed.R.Civ.P. 11. The imposition of Rule 11 sanctions is not a substitute for a judgment on the merits, however. "Rule 11 sanctions based on groundless factual allegations are only appropriate where plaintiffs offer *no* evidence to support their allegations." *Lawson v. Secretary, Department of Corrections*, 563 Fed. App'x 678, 680 (11th Cir. 2014) (citing *Davis v. Carl*, 906 F.2d 533, 536 (11th Cir. 1990)) (internal

11

punctuation omitted). The Court also has the inherent power to sanction bad-faith conduct. *See, e.g.*, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46-50 (1991). This inherent power, though, "must be exercised with restraint and discretion." *Id.* at 44.

The substance of the conversation between Plaintiff and Russo is in dispute, as are all the other allegations in the complaint. Even if Russo's affidavit is accepted as true, his testimony does not conclusively show that Plaintiff has fabricated the allegations in the complaint. With the exception of Plaintiff's alleged admission that he was just "writing things down" when he alleged that Russo "sexually assaulted" him, nothing in the conversation as described by Russo indicates that Plaintiff admitted to fabricating the allegations in the complaint. The conversation Russo describes could be reasonably construed as an attempt to persuade or cajole a reluctant officer who might otherwise be inclined to support his fellow officers. These are matters more appropriate for trial, in the evaluation of Plaintiff's credibility.

Because the record does not clearly show that no evidence supports Plaintiff's factual contentions, and because it is not presently clear that Plaintiff's lawsuit is solely the product of bad-faith litigiousness on Plaintiff's part, the extreme sanction of dismissal is not now appropriate. It is therefore Recommended that the Defendants' Motion for Sanctions be denied.

### PLAINTIFF'S MOTIONS FOR INJUNCTIVE RELIEF

Last before the Court are two motions for injunctive relief filed by Plaintiff: a Motion for Preliminary Injunction (Doc. 82), and a Motion for TRO (Doc. 86). In his Motion for Preliminary Injunction, Plaintiff alleges that the Defendants, in retaliation for Plaintiff's filing the instant lawsuit, (i) moved Plaintiff into isolation; (ii) denied Plaintiff mail from his family; and (iii) served Plaintiff late meals with inadequate portions. (Doc. 82, p. 1). In his Motion for TRO, Plaintiff alleges that an Officer Conyers, who is not named as a Defendant to this action,

sexually harassed Plaintiff. (Doc. 86, p. 1). Plaintiff also alleges in his Motion for TRO that the Defendants and other, unspecified GDCP officers are "trying to poison" Plaintiff by putting feces or other substances with "a chemical smell and taste" into Plaintiff's meals (*Id.*).[5]

A TRO or preliminary injunction is appropriate only where the movant demonstrates: (a) a substantial likelihood of success on the merits; (b) that the TRO or preliminary injunction is necessary to prevent irreparable injury; (c) that the threatened injury outweighs the harm that the TRO or preliminary injunction would cause to the non-movant; and (d) that the TRO or preliminary injunction would not be adverse to the public interest. *Zardui-Quintana v. Richard*, 768 F.2d 1213, 1216 (11th Cir. 1985). Preliminary injunctive relief is "an extraordinary and drastic remedy not to be granted unless the movant 'clearly carries the burden of persuasion' as to the four prerequisites." *Id.* Additionally, "proof of irreparable injury is an indispensable prerequisite to a preliminary injunction." *Siegel v. LePorei*, 234 F.3d 1163, 1179 (11th Cir. 2000).

At present, Plaintiff has not met his burden of demonstrating a substantial likelihood of success on the merits. Ample evidence in the record suggests that Plaintiff—who is housed in the "special management unit" of the GDCP—instigated at least two of the excessive force incidents at issue in this case by destroying his cell sprinkler and window. Additionally, the Defendants have submitted evidence showing that Plaintiff pleaded guilty to making threats and to throwing urine out of his cell on August 26, 2014. (Docs. 85-1, p. 5; 85-2, p. 2; 85-3, p. 2). In response to these incidents, Plaintiff was assigned to "silver lock" status and the most restrictive conditions of the Special Management program. Aff. Of June Bishop, Doc. 85-1. Many of the restrictions

---

[5] Attached to Plaintiff's Motion for TRO is an Exhibit labeled "spoiled food sample," which appears to be a smudge on a piece of paper, covered by a piece of plastic wrap. (Doc. 86, p. 2).

about which Plaintiff now complains in his motions for injunctive relief appear to stem from disciplinary actions pursuant to Plaintiff's guilty plea. (Doc. 85-1, p. 6).

Plaintiff has also failed to provide proof of a threat of irreparable injury sufficient to warrant the "drastic remedy" of preliminary injunctive relief. *Zardui-Quintana*, 768 F.2d at 1216. Plaintiff's claims that his food is being poisoned or contaminated are supported only by Plaintiff's own self-serving representations, which are of limited credibility. Plaintiff has not alleged that he has suffered any illness as a result of the alleged contamination, or that he has sought medical attention of any kind. Plaintiff has also continued to file numerous motions and briefs despite his alleged restriction to isolation.

Because Plaintiff bears the heavy burden of persuasion required to obtain preliminary injunctive relief, and because Plaintiff has not met that burden, it is Recommended that Plaintiff's motions for injunctive relief be denied.

## **CONCLUSION**

After a careful review of the record, it is **RECOMMENDED** that the Defendants' Motions to Dismiss be **GRANTED IN PART AND DENIED IN PART** such that Plaintiff be allowed to proceed with his excessive force, failure to intervene and failure to protect claims, but not against the Defendants in their official capacities for monetary damages. It is also **RECOMMENDED** that the Defendants' Motion for Sanctions be **DENIED**, and that Plaintiff's Motions for Injunctive Relief be **DENIED**. Pursuant to 28 U.S.C. 636(b)(1), the parties may serve and file written objections to this Report and Recommendation with the District Judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

**SO RECOMMENDED**, this 21st day of October, 2014.

                                              s/ Charles H. Weigle
                                              Charles H. Weigle
                                              United States Magistrate Judge